IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Robert Taylor Ripley et al.    *
                               *
v.                             *     Civil No. CCB-19-0373
                               *
Long Distance Relocation Services, LLC et al.   *

## MEMORANDUM

Now pending are the defendants' motion to dismiss plaintiffs' complaint pursuant to Rules 12(b)(3) and 12(b)(6) and the plaintiffs' motion to strike late-filed affidavits. Both motions have been fully briefed and no oral argument is necessary. For the reasons stated below, the court will grant the defendants' motion to dismiss Count II, and otherwise deny without prejudice the defendants' motion to dismiss. The court will grant the plaintiffs' motion to strike the late-filed affidavits.

## FACTS AND PROCEDURAL HISTORY

Dr. Robert Taylor Ripley and Anna Nesbit Ripley (the "Ripleys") hired Long Distance Relocation Services ("LDRS") to pack and transport their household goods from Potomac, Maryland to Houston, Texas. The Ripleys have sued various individuals and companies (collectively, "the defendants"), although the exact relationship between them is unclear to the Ripleys. LDRS appears to be the same as KD Clark Investments, LLC. The Ripleys' credit card receipts show that they made payments to Long Distance Van Lines ("LDVL"), which might also do business as Maryland Moving and Storage, Inc. and North Eastern Moving and Storage,

1

Inc. The Ripleys also have sued individual defendants Alexei Dorokhov, owner of KD Clark/LDRS, Roman Spinu, and Anthony Spade.[1]

On June 18, 2018, the Ripleys received a "Binding Moving Estimate" from the defendants, based on the Ripleys' reported inventory, a review of the home on Zillow, and an in-home inspection done by another company. Compl., ¶¶ 19–21, ECF 1. Richard, an employee of the defendants who prepared the estimate, told Dr. Ripley that LDRS was not a broker and would perform all aspects of the move. *Id.* ¶ 22. On July 11, Lissa, a quality assurance representative for the defendants, told Dr. Ripley that Richard had underestimated the move, and the price would be higher. *Id.* ¶ 23. She gave him a revised quote the next day. *Id.* ¶ 24. According to the Ripleys, since this was within six days of the move, "the Ripleys had no practical choice but to comply with the exorbitant demand." *Id.* ¶ 25. On July 12, 2018, the defendants increased the cost again. *Id.* ¶ 26. On the day of the move, the movers appeared with two rented trucks. *Id.* ¶ 27. The primary driver looked through a few rooms of the house and told the Ripleys the quote was underestimated, and gave a new revised estimate that was non-negotiable. *Id.* ¶ 27. After the goods were packed, the defendants increased the packing costs again. *Id.* ¶ 31. The Ripleys allege that the movers "underfilled multiple boxes which artificially increased the total cubic feet of the shipment" and "caused serious damage to the house." *Id.* ¶ 32–33.

The Ripleys' goods were unloaded in Houston on July 26, 2018. The Ripleys allege that the driver of the truck did not work for the defendants, and the two movers who assisted the driver said they responded to a Craigslist ad placed by the driver. The driver wore a shirt that said "Move4less." *Id.* ¶ 35. The driver insisted that Dr. Ripley pay him immediately in cash or

---

[1] The complaint does not specify the positions of Spinu and Spade. In Spinu's affidavit, ECF 12, he states that he was formerly associated with Maryland Moving and Storage.

2

he would not unload the goods, and Dr. Ripley paid him $4,131.15 in cash.[2] *Id.* During the move, multiple items were damaged, permanently destroyed, or lost. *Id.* ¶ 34.

The Ripleys allege that the defendants have provided illegal interstate brokerage services in violation of 49 U.S.C. § 14916 (Count I), have engaged in illegal "weight bumping" in violation of 49 U.S.C. § 14912 (Count II), have committed fraud (Count III), have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count IV), have conspired to violate RICO (Count V), and have violated the Maryland Consumer Protection Act (Count VI).

## STANDARD OF REVIEW

Forum Selection Clause:

The defendants' Rule 12(b)(3) motion attempts to enforce the forum selection clause in the bill of lading allegedly executed between the defendants and the Ripleys, and therefore will be treated as a motion to dismiss pursuant to *forum non conveniens*.[3]

A "federal court interpreting a forum selection clause must apply federal law in doing so." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). The court must first determine whether the forum selection clause is mandatory and whether the plaintiff's claims are within the scope of the clause. *Open Text Corp. v. Grimes*, 262 F. Supp. 3d 278, 287–88 (D. Md. 2017). The court must also determine if the forum selection clause is "contractually valid." *Sears Contract, Inc. v. Sauer Inc.*, 378 F. Supp. 3d 435, 440 (E.D.N.C. 2019) (quoting

---

[2] According to the Ripleys, the defendants gave a third revised estimate of $20,017. Compl. ¶ 31. It is not clear if the $4,131.15 paid in cash was part of or in addition to the amount owed under that estimate.

[3] The defendants seek to enforce the forum selection clause under Rule 12(b)(3). The Supreme Court made clear in *Atlantic Marine* that a forum selection clause cannot be enforced by a motion to dismiss under Rule 12(b)(3), and is appropriately considered under the doctrine of *forum non conveniens*. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). The court, however, will treat defendants' motion as a *forum non conveniens* motion. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) ("Although Apple had not formally moved to dismiss based on forum non conveniens, this dismissal motion plainly invoked the forum selection clause and asked the court to enforce it . . . the judge was well within his discretion to treat the motion as, in substance, a forum non conveniens motion."). The defendants do not otherwise contest venue as improper under 28 U.S.C. § 1391.

3

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Tex.*, 571 U.S. 49, 62–63, n.5 (2013). Forum selection clauses are presumptively valid, but this presumption "is not absolute and, therefore, may be overcome by a clear showing that they are unreasonable under the circumstances." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996); *BAE Systems Tech. Solution & Servs., Inc. v. Republic of Korea Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018) ("[C]ourts enforce forum selection clauses unless it would be unreasonable to do so."). "Choice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." *Allen*, 94 F.3d at 928.

Once the forum selection clause is determined to be valid, mandatory, and encompassing of the plaintiff's claims, the plaintiff bears the burden of "showing why the court should not transfer the case to the forum to which the parties agreed." *Atlantic Marine*, 571 U.S. at 64.[4] "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. To prevent transfer, the plaintiff must show "extraordinary circumstances unrelated to the convenience of the parties" and based on "public-interest factors only." *Id.* at 62, 64.

---

[4] *Atlantic Marine* speaks of "transfer" because it involved a 28 U.S.C. § 1404(a) motion. The court, however, made clear that § 1404(a) "is merely a codification of the doctrine of *forum non conveniens*" when the transferee forum is another federal court, *Atlantic Marine*, 571 U.S. at 60, and the Fourth Circuit has applied *Atlantic Marine*'s framework in the context of a dismissal for *forum non conveniens*. *BAE Systems*, 884 F.3d at 470–71.

4

Motion to Dismiss:

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

**DISCUSSION**

Forum Selection Clause:

In their motion to dismiss, the defendants attach two pages of what they claim is a bill of lading between the defendants and the Ripleys. The first page contains a forum selection clause, which states:

> SECTION 11: AGREED MANDATORY CHOICE OF LAW, VENUE AND JURISDICTION. If a lawsuit becomes necessary to resolve any dispute between the carrier and shipper, said suit shall and must only be brought in circuit or county court in and for Broward County, Florida. Suits involving disputes over interstate shipments must be limited to the governing federal law. Both parties agree to submit themselves to the jurisdiction of the Florida Court and agree given the relationship to the state, such

exercise is reasonable and lawful. Shipper consents to jurisdiction in Broward County, Florida and hereby waives the right to be served within the State of Florida.

The second page is a valuation addendum which contains the signature of one of the Ripleys.[5] The signature is dated July 18, 2018. "Long Distance Van Lines" and an address in Columbia, MD appear at the top of the signature page.

The Ripleys argue that the forum selection clause is not enforceable. They argue that it does not apply, as the defendants did not attach a complete copy of the alleged bill of lading and there is a dispute as to whether the Ripleys signed it. They further argue that the claims do not arise out of the contract, only one of the seven defendants is even ostensibly party to the bill of lading, and that its enforcement would be unreasonable and unjust.

The defendants have not adequately shown that the Ripleys agreed to the forum selection clause. First, the defendants have supplied one page of the alleged bill of lading containing the forum selection clause, and then a valuation addendum signed by Mr. Ripley. While the defendants are correct that a valid forum selection clause is usually enforced, here, the defendants have not shown that a valid forum selection clause was signed and agreed to by the Ripleys, as only the signed *addendum* is attached and there is no evidence that the Ripleys ever received or assented to the bill of lading. *See Star Techs., LLC v. Gillig LLC*, Civil No. 3:12-1720, 2012 WL 5194072, at *3 (S.D. W. Va. Oct. 19, 2012)[6] (declining to enforce forum selection clause when there was no evidence the plaintiff received the terms and conditions containing the forum selection clause nor did the plaintiff sign the page with the terms) (and collecting cases). Therefore, the present record does not "contain sufficient facts for the court to

---

[5] The signature is not legible, but the customer initials are listed as "RTR" so the signature appears to be that of Dr. Robert Taylor Ripley.
[6] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

determine that" the forum selection clause is valid and binding on the Ripleys. *Pax, Inc. v. Veolia Water N. Am. Operating Servs., Inc.*, 347 F. Supp. 2d 281, 284 (W.D. Va. 2004).[7]

The Ripleys also argue that several of the defendants are not party to the forum selection clause and therefore cannot enforce it. A forum selection clause may be enforced by a party to the agreement, its agent, a third-party beneficiary, or a "'closely related' party so as to entitle it to the rights and obligations of the [forum selection clause]." *Open Text*, 262 F. Supp. 3d at 287; *Belfiore v. Summit Fed. Credit Union*, 452 F. Supp. 2d 629, 633 (D. Md. 2006). It appears that LDVL was a party to at least the valuation agreement, as its name appears at the top of the signature page. It might also be assumed that it was a party to the bill of lading. The other defendants, however, have provided no evidence that they were parties to the bill of lading. Further, at this stage, the court does not have enough information to determine if the other defendants are "closely related" to LDVL so that they may also enforce the forum selection clause. Therefore, even if it is shown that the forum selection clause is binding on the Ripleys, the non-party defendants cannot necessarily enforce it.

The Ripleys also argue that the forum selection clause is invalid and enforcement would be unreasonable because of the unequal bargaining power between the Ripleys and the defendants, because there is no connection to Florida, and because Florida would not accept jurisdiction of this lawsuit. In regard to the unequal bargaining power, a contract of adhesion is not per se unreasonable, *Belfiore*, 452 F. Supp. at 632–33, and the plaintiff must show that "the forum selection clause itself was the product of fraud or coercion." *Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 704 (M.D.N.C. 2007); *see Allen*, 94 F.3d at 928 ("there is no contention by

---

[7] For the sake of completeness, the court notes that the forum selection clause is mandatory, as the clause provides that any dispute "shall and must only" be brought in Broward County. This is "specific language of exclusion" demonstrating that Broward County is the only forum in which claims may be brought. *BAE Systems*, 884 F.3d at 472.

7

the Names that they were fraudulently induced into agreeing to the forum selection or choice of law clause"). Additionally, a forum selection clause may be unreasonable if it points to a forum to which the action has no connection. *See Sears Contract*, 378 F. Supp. 3d at 442 ("[O]ther than the forum-selection clause and the fact that Sauer has an office in Florida, this action bears no connection to Florida."). This might indicate a bad-faith attempt to discourage customers from pursuing claims against the defendants. *See Eisaman v. Cinema Grill Systems, Inc.*, 87 F. Supp. 2d 446, 450–51 (D. Md. 1999). Finally, the Ripleys cite to case law and statute indicating that Florida courts might refuse to exercise personal jurisdiction over the defendants.

The court does not have enough information to rule on these issues. More importantly, it need not address them yet as it is not clear whether the Ripleys ever bound themselves to the forum selection clause and whether some or all of the defendants can enforce the forum selection clause. Therefore, the court will deny the defendants' motion to dismiss based on the forum selection clause.

Motion to strike the late-filed affidavits:

The Ripleys have moved to strike affidavits filed by defendants Alexei Dorokhov and Roman Spinu for being untimely, irrelevant, and misleading. The affidavits concern the residences of some of the defendants. The court will grant the Ripleys' motion to strike, as the affidavits were late-filed and have been challenged as to their accuracy, but without deciding whether the affidavits are irrelevant or misleading. Because this case will proceed to discovery, the parties will have an opportunity to gather more information about the residences of the defendants.

Motion to Dismiss:

*Count 1, Unlawful Brokerage Activities:*

8

The Ripleys allege that one or more of the defendants illegally provided brokerage services for the transportation of household goods in violation of 49 U.S.C. § 14916. The defendants argue that the Ripleys have only alleged that the defendants used rented trucks and contract labor, and have not properly alleged that the defendants engaged in brokerage services.

Title 49 U.S.C. § 14916(a) states that a "person may provide interstate brokerage services as a broker only if that person (1) is registered under, and in compliance with, section 13904[.]" The liability for claims under this section applies "jointly and severally (1) to any corporate entity or partnership involved; and (2) to the individual officers, directors, and principals of such entities." § 14916(d). A broker "means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).[8]

The defendants do not dispute in their motion to dismiss that they are not registered as brokers under § 13904. The question is whether the defendants acted as brokers with respect to the Ripleys. *See Schramm v. Foster*, 341 F. Supp. 2d 536, 550 (D. Md. 2004). "Whether a company is a broker or a carrier . . . is not determined by how it labels itself, but by how it holds itself out to the world and its relationship to the shipper." *Saacke N. Am., LLC v. Landstar Carrier Servs., Inc.*, 5:11CV107-RLV, 2013 WL 7121197, at *7 (W.D.N.C. Dec. 19, 2013) (citation omitted). For example, allegations that a company "only arranged for [another company] to pick up the goods directly from [the shipper], and never handled, controlled, or took

---

[8] Each of the defendants may be either a motor carrier or a broker, but cannot be both in the same transaction. "[T]here is no overlap in the statute between 'carriers' and 'brokers[.]'" *5K Logistics, Inc. v. Daily Exp., Inc.*, 659 F.3d 331, 335 (4th Cir. 2011). According to 49 C.F.R. § 371.2(a), "motor carriers . . . are not brokers . . . when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport."

9

possession of the goods itself" properly alleged that the company was acting as a broker and not a carrier. *AIG Europe Ltd v. General System, Inc.*, RDB-13-0216, 2014 WL 3671566, at *4 (D. Md. July 22, 2014); *see Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1301 (11th Cir. 2018) ("We therefore hold that a party is not a broker under the Carmack Amendment if it has agreed with the shipper to accept legal responsibility for that shipment.").

The Ripleys allege that they communicated with LDRS, but that they actually paid LDVL, and that they later paid movers, in cash, to unload their goods. This gives rise to the inference that either LDRS or LDVL may have been acting as a broker in arranging for other companies to transport the Ripleys' goods without actually exercising control over and assuming responsibility for the goods. Therefore, at this stage, the Ripleys have plausibly alleged that one or more of the defendants may have illegally provided brokerage services.

*Count II, Weight Bumping:*

The Ripleys allege that the defendants violated 49 U.S.C. § 14912 by engaging in weight bumping "when they assigned a fictional volume to the Ripleys' shipment and packed near empty boxes on to trucks to justify their claim of increased, above-estimate volume." Compl. ¶ 46. The defendants argue that, even if true, the Ripleys have alleged only false statements related to volume, not weight. In response, the Ripleys point to the U.S. Department of Transportation Office of Inspector General's website that states that "weight bumping" refers to "[k]nowingly assigning a fraudulent weight or volume to a shipment."[9]

Section 14912 defines "weight-bumping" as "the knowing and willful making or securing of a fraudulent weight on a shipment of household goods[.]" The parties have presented no case, and the court has identified none, involving a claim for weight bumping based on false

---

[9] Dep't of Transport. OIG, *Household Goods Moving Fraud*, https://www.oig.dot.gov/investigations/household-goods-moving-fraud (last visited Oct. 21, 2019).

10

statements about volume. Additionally, the website that the Ripleys point to does not purport to interpret 49 U.S.C. § 14912 but simply describes types of fraud that could be committed against consumers. Therefore, the Ripleys have not adequately shown that the alleged fraudulent statements about volume amount to a violation of 49 U.S.C. § 14912. The court will dismiss this claim.

*Count III, Fraud:*

The Ripleys allege fraud based on "numerous false statements" by the defendants. Compl. ¶ 50. They allege that the defendants made false statements regarding the price, who would perform the services, and the volume of the Ripleys' household goods. The defendants argue that the Ripleys do not plead fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b).

Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See State Farm Mutual Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 563 (D. Md. 2019) ("In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where and how: the first paragraph of any newspaper story.") (internal quotation and citation omitted). The purpose of Rule 9(b) is to put defendants on notice of the alleged fraudulent conduct, protect defendants from frivolous suits, eliminate fraud actions where all facts are learned in discovery, and protect defendants from harm to their goodwill and reputation. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citations omitted). Consequently, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that

plaintiff has substantial prediscovery evidence of those facts." *State Farm*, 381 F. Supp. 3d at 563 (quoting *Harrison*, 176 F.3d at 784).

Here, the Ripleys adequately plead fraud. They allege several false statements made by or attributable to the defendants. For example, the Ripleys allege specific false statements from Richard and Lissa, who both work for LDRS, and the driver who packed their goods and Brandi, who apparently either work for LDRS, with whom the Ripleys communicated, or LDVL, whom the Ripleys paid. The Ripleys also allege that the movers falsely represented the volume of the goods by under-packing the boxes. These allegations are sufficiently particular to make the defendants aware of the "particular circumstances for which [they] will have to prepare a defense at trial." Although the Ripleys need discovery to learn about the relationship between the defendants, they have substantial prediscovery evidence of the alleged fraudulent statements, as they have firsthand knowledge of the statements and the circumstances surrounding them.[10]

*Count IV and Count V, Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and conspiracy to violate RICO, 18 U.S.C. § 1962(d):*

The Ripleys allege that the defendants have engaged in "a pattern of racketeering activity" through "wire fraud in violation of 18 U.S.C. § 1343, extortion in violation of state law and 49 U.S.C. § 14915, and interference with commerce in violation of 18 U.S.C. § 1951." Compl. ¶ 61. Specifically, the Ripleys allege that the defendants "promote[d] their fraud by using false websites and reviews, emailing and mailing false estimates that they do not intend to honor, and by extorting victims to regain their possessions" and "refus[ed] to unload goods without an additional cash payment and threaten[ed] to withhold delivery of those goods."

---

[10] The defendants state in their Motion to Dismiss that the complaint includes allegedly false statements made by Richard and Lissa, who are not defendants in this case. The Ripleys, however, have properly alleged that these statements, made by individuals working for defendants, are attributable to the defendants.

12

*Id.* ¶¶ 62–63. The defendants argue that the Ripleys have not adequately alleged that the defendants engaged in a pattern of racketeering activity, instead complaining "only of a single discrete transaction, with a single (albeit married) party, which transaction occurred over a short period of time." Defs.' Reply, at 16, ECF 10.

Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To show a "pattern" of racketeering activity, the plaintiff must identify at least two related acts of racketeering activity, occurring within 10 years of each other, and must demonstrate "continuity." *U.S. Airlines Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 318 (4th Cir. 2010) (citing 18 U.S.C. § 1961(5) and *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989)). "To allege open-ended continuity, a plaintiff must plead facts . . . that give rise to a reasonable expectation that the racketeering activity will extend indefinitely into the future." *Id.* (citation omitted). When racketeering activity has a built-in ending point, it is not open-ended. *Id.*[11]

The Fourth Circuit has cautioned against using RICO to capture "ordinary or garden-variety fraud claims better prosecuted under state law," especially when there is only one victim. *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000); *see also Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (allegations of acts occurring over one year, narrowly directed toward a single fraudulent goal, and involving one perpetrator and one set of victims did not state a RICO claim). The Ripleys make cursory allegations that there are other customers who also have been defrauded by defendants, although they base these

---

[11] The Ripleys appear to allege only open-ended continuity, and not closed continuity. Closed continuity requires acts extending over a substantial period of time. *U.S. Airline Pilots*, 615 F.3d at 318 (citing *H.J. Inc.*, 492 U.S. at 242).

13

allegations on online reviews and provide no details as to who the customers are and how they were allegedly defrauded. Compl. ¶ 64. The court notes that the defendants' alleged conduct does not appear to be the kind appropriately subject to RICO liability.

The court need not decide this now, however. The scope of the defendants' alleged fraudulent scheme requires additional discovery regardless of the eventual disposition of the RICO claims. Accordingly, the court will deny without prejudice the defendants' motion to dismiss as to Counts IV and V.

*Count VI, Violation of the Maryland Consumer Protection Act*:

The Ripleys allege that the defendants violated the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, §§ 13-101, *et seq.*, by engaging in fraud with respect to the provision of household moving services. Compl. ¶ 82. The defendants argue that these claims are preempted by the Carmack Amendment.

"Initially enacted in 1906 as an amendment to the Interstate Commerce Act of 1887, the Carmack Amendment creates 'a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading.'" *5K Logistics*, 659 F.3d at 335. It preempts common law contract or negligence claims against a carrier for loss or damage to goods, *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 705–07 (4th Cir. 1993), and some courts have held that it also preempts other tort and contract claims relating to the shipment, such as claims for fraud. *See Miracle of Life, LLC v. N. Am. Van Lines, Inc.*, 368 F. Supp. 2d 494, 498 (D.S.C. 2005) (collecting cases).

The Carmack Amendment, however, only regards the liability of carriers. *Shao*, 986 F.2d at 706; *5K Logistics*, 569 F.3d at 338 (a breach of contract action between a shipper and a broker is not preempted by the Carmack Amendment); *see also Essex Ins.*, 885 F.3d at 1299 ("If Barrett

was a 'broker,' the Carmack Amendment does not apply[.]"). As discussed *supra*, it is not clear if some or all of the defendants were acting as brokers rather than carriers. To the extent the defendants were acting as brokers, the Carmack Amendment would not preempt the state law claims. Therefore, at this stage, the court need not decide whether the Carmack Amendment would preempt some or all of the Ripleys' state law claims against the defendants if they are carriers.[12]

*Plaintiffs' Recovery:*

The defendants argue that the Ripleys' recovery is limited by statute and contract. The court declines to decide this issue at the motion to dismiss stage.

## CONCLUSION

For the reasons stated above, the court will grant in part and deny in part the defendants' motion to dismiss. The court will grant the defendants' motion to dismiss solely as to Count II. The court will otherwise deny the motion to dismiss without prejudice. The court will grant the Ripleys' motion to strike. A separate order follows.

10/25/19
Date

Catherine C. Blake
United States District Judge

---

[12] The defendants also argue that the Ripleys cannot seek relief for the loss of, theft of, and damage to their property because they have not filed a claim for damages per 49 C.F.R. § 370.3. Memo. in Supp. of Defs.' Mot. to Dismiss, at 5, ECF 8-1. This requirement applies only to claims against carriers, not brokers. Because the Ripleys have properly alleged that one or more of the defendants acted as a broker, at this stage the court will not decide whether any of the Ripleys' claims are subject to 49 C.F.R. § 370.3.

15